First argued case this morning is No. 13-5103, Lifton v. United States. Mr. Strauss. Yes, proceed. Good morning. Jonathan Strauss on behalf of the Plaintiff Appellant. May it please the Court. The Court of Federal Claims was correct regarding approximately 90-95% of its decision. It, however, erred regarding the last small part of its opinion, which concluded that a component of Mr. Datticus' advice was not substantive and, therefore, did not amount to reasonable cause with respect to the delay in filing the estate tax return. I'm going to focus today on a very, very small, narrow, discrete portion of the Court of Federal Claims' opinion. Can I ask you something before you get to the issue that you've actually raised? I had understood from the papers that you all actually did pay into the IRS more than the amount ultimately due, and did so within the retroactively extended time for payment. And if that's right, and you'll tell me if it is, why is there any penalty due since you multiply 5% times the net due? We're asking the same question, Your Honor. We don't believe that there should be a penalty due. Have you raised that issue here? I don't believe we raised that issue here. But that's the statute. Excuse me for interrupting, but to pursue this very point, the statute is section 6651B1. You know which statute I'm referring to? Yes. A1 and A2 is the relevant statute. Okay. You mentioned it, but haven't apparently relied on it. It's hard to tell. But you're not saying as a matter of statutory interpretation that the point that Judge Durando has mentioned is not before us? I think we broadly discussed 6651A in our briefs, Judge. I guess this is really a point, I think, in B, where A says 5% times the amount that the tax, I forget the exact language. Well, the amount that you're supposed to show on the return. And then B says that amount is actually, you're supposed to subtract anything that you did pay before the prescribed time. As I understand it, you actually paid more than the 800-something thousand dollars in January. In February of 2004, you retroactively got the extension on the due date of payment, which had been December. So how is it that when you apply B and subtract the amount that you paid, there's anything to multiply 5% by? This is probably more to be discussed with the IRS, but I'm sort of mystified why there's a dollar amount involved here. Raising the issue, I am also mystified. If there is an error in a computation such as this, the IRS is empowered, obviously, to go back and correct that error. And that's done after the fact. The answer is, isn't it, that the IRS views, has interpreted that provision as only applying to payments that are made before the original due date, as opposed to payments that are made before the extended date? I don't know the answer to that, Your Honor. Generally, penalties are computed based on an outstanding amount due. In my case, I believe that the IRS has interpreted that provision as being limited to payments that are made before the original due date, which this payment was not made, right? It was not made before the original due date. The payment was made after December. It was made in January, and the original due date was December. The original due date was December 2nd, 2003. There was an extension requested of six months, and it was granted through June 2nd, 2004, and the payment was made on January 20th, approximately, 2003. Yeah, so average original due date. So you're not objecting to the interpretation of B-1? It says the penalty on the net amount that they include on the net amount due, the amount that was already paid? When you say we're not objecting, I guess if there's a computational error, Your Honor, the only way I can answer that is that we believe that the IRS would be wrong with respect to its assessment of the penalty that should be abated in full. If there's a mathematical computation, that's wrong. But you haven't raised that. Again, we raised 6651 broadly in our briefs, but we didn't zero in on that particular argument. You're correct. So what I was beginning to say was that the record shows that Mr. Datticus put the IRS on notice when he sent a letter to them explaining that he was relying on the statutory construction as well as the regulatory framework for filing the return late, and the IRS never got back to him, never wrote back, never communicated with him at all. I'll take a hypothetical. Sure. Suppose – forget about the merit reduction aspect of this thing, which the Court of Federal Claims ruled in your favor on. Until you're satisfied that you've computed everything correctly. Would that be sufficient to eliminate the penalty, that kind of advice? In 99% of the cases, no. In this case, the 1%, there was no guidance for Mr. Datticus to provide his advice for. The statute and the regulations said that you could file the return late, and then after you were in legal no-man's land. There was no deadline. There was nothing. The statute and the regulation contemplate that you can wait until the spouse becomes naturalized. That here took a year or two, and ultimately he was in no-man's land as far as when the ultimate deadline was. There was no unambiguous deadline. The Supreme Court has said there has to be an unambiguous deadline, and if there's an unambiguous deadline, you're out of luck if you violate that deadline. The advice that the Court of Federal Claims found to be reasonable was that you could wait until the naturalization occurred. Right. That advice only carried you through the date of the naturalization. Correct. Our position is that you were in legal no-man's land at that point. You didn't have a deadline anymore. Once you don't have a deadline... You did have a deadline. The advice was you could wait until naturalization. Didn't that suggest that once naturalization occurred, there was an obligation to file? Well, there was an obligation to file, but then they still couldn't liquidate the marital deduction, which was the very purpose for trying to get naturalized. What do you mean liquidate? They couldn't figure out what the exact amount was because they were still litigating with the surviving spouse. As the record states, a joint exhibit in some of the exhibits, the attorney for the surviving spouse was gone for extended periods of time in Mr. Datticus's declaration, and it dragged on for another six months approximately. Then they ultimately were able to figure out what the ultimate marital deduction was because they were still litigating with her, and she had a claim. There's no basis in the code for waiting to file a return because you're worried about computational issues. You file, and then you worry about the computations later, right? If there's an unambiguous deadline. Here there was no unambiguous deadline. That's the whole point here. We're putting all of our eggs in that basket, Your Honor. Our basket is that if there's no unambiguous deadline, we didn't have any guidance as to what the filing deadline was. So we were litigating with her even after she became naturalized. We ultimately, with haste, and that's what Mr. Datticus's declaration states, pulled together the relevant numbers and filed the return. We were in an overpayment situation. There was no clear statute. There was no case law. There was no authority whatsoever in this situation to guide Mr. Datticus or the executor as to what the deadline was, period. In a normal case where an advisor says you can wait until after April 15th or take a crack at filing this, there's an unambiguous deadline. Here there was no deadline. The regulation contemplated filing late. So Mr. Datticus looked at all of this information and, after all was smoke cleared, told his client that you can file late. It sounds though you're saying any time there's legal advice that gives you a basis for extending the deadline, there's never a deadline anymore and you can never be held to a penalty for failing to file. I agree with you. Again, like I said, we're putting our eggs in the basket then. Boyle says that you have to have an unambiguous deadline. If it's unambiguous, you can't delegate the duty to file late. What I don't hear you say is that, well, let's say they filed late, but that it wasn't as if they filed 10 years late. They filed late with an excuse. Correct. I don't hear you say that because the government already had $100,000 more than they agreed they were entitled to, it doesn't, as far as the penalty is concerned, that the monetary penalty shouldn't apply. Again, going back to B1, which refers to A1, which can be read perhaps ambiguously, but can be read, I think, to say that the penalty is based on the unpaid tax. There was no unpaid tax. It was overpaid tax, but I couldn't find that argument pressed. You sort of gloss over it. Is that because you don't think it's viable under the statute? I think, as the court raises it, I think it is viable. But what I guess I'm saying is that I always thought when we were drafting these briefs that, number one, the equities pointed towards the taxpayer. You mean the advice of counsel? Exactly. Exactly. But also, if you're in an overpayment situation, no harm, no foul. The regulation in the statute allowed Mr. Dadakis to provide the advice that you could file late. Everybody knew you were going to file late. He put the IRS on notice that he was filing late. The IRS never responded to him. And after all the smoke clears, we believe that the penalty should be abated in full. Let's hear from the government. Sure. Thank you very much. Your honors, may it please the court. I'm John Millett, and I represent the United States. And I see that I need to address right away that the IRS does use the mechanics and methodology of computing the penalty. Not assuming, but by law, and we would cite to you section 6151C, that a time for filing is fixed on the original due date. But isn't it curious? Here someone has prepaid, overpaid the tax by a sizable amount. So the government has the money, has the use of the money and all else. And what with this and that, for good reason or not, files the piece of paper later. Nonetheless, you hit them for 25% of the entire tax. I understand. There's no underpayment. The penalty is quite stiff. So it isn't 25% of the tax due, according to the statute. That tax was already paid and prepaid. Yes, and yet Congress seemed to want to incentivize and strongly encourage timely filing. And it is a stiff penalty in this particular case. And I did, as I sat there, because I recalled seeing in the record, in the original refund claim that the estate filed, they actually conceded in a footnote that this is a… But can you point us to something or other, even if it requires additional briefing, say that Congress intended this result that when there's no underpayment, and in fact a sizable overpayment, nonetheless, 25% of the tax is due if you are delayed for good reason when you file the piece of paper with a final calculation. Yes, this is how the IRS is looking at the statute. But is there a formal interpretation? I must say we couldn't find it. We looked and didn't find anything either. But what we understand is the statute itself. What you're saying is that the IRS has interpreted the statute based on the other provision that you mentioned to require payment before the original due date rather than the extended due date. Because otherwise there is no reduction under B-1. But I guess, again, just from the statute, what I find peculiar about that is that in A-2, which talks about paying the amount shown on a return on or before the date prescribed for payment of such tax, it immediately follows, continues by saying, determined with regard to any extension of time for payment. I would have thought that when the phrase prescribed for payment is then used in B-1, it would, in fact, carry along the same determined with regard to extensions. But you're saying that the IRS has said, no, those are radically different things. Yes, the penalty for late filing is quite severe even vis-à-vis this late payment penalty. But how do you measure the penalty for late filing when the amount due was paid years before, overpaid? You're saying the penalty is not... If they had made that payment... Let me finish the question. I'm sorry. If the question is, the question is whether the penalty is levied on that which was unpaid or whether they're entitled to a penalty on the total amount which was overpaid, which is what happened here, right? They overpaid. They overpaid, but the payment wasn't submitted until after the due date of the return. And the way we read the statutes, and again, Section 6151 appears to address this specifically. It's 6151A says with respect to, I believe that addresses payment, and it says that the fixed date for payment without regard to any extension is the date that the return was due. No, I'm sorry. I'm sorry. Unless I'm misreading this. A2 is the one that says in case of failure to pay the amount shown as tax on any return prescribed for payment of, before the date prescribed for payment of such tax, it doesn't say without regard to extension. It says determined with regard to any extension of time. I understand the confusion, Your Honor. And then B... I'm not referring to that particular provision. I'm referring to a provision prior in the code that talks about fixed dates and what they mean within the code. So if you look at 6151, Section 6151, and that seems to be there. You look at that statute. That establishes the fixed dates wherever otherwise referred to in the code. And the way that the mechanics have calculated the penalty that would work for filing, we would agree with respect to the late payment penalty the way that statute you just read is written, that you would reduce it by the amount paid by the extended due date. The late filing penalty, on the other hand, doesn't have that same language. It talks about a prescribed time for filing. Relating back to 6151, or C, I believe it is, it tells you that the prescribed time for filing within the code is the original due date for filing. So this is why there is some confusion here. But again, I'd point out to Joint Appendix, page number 306, where the estate actually concedes in a footnote that this is the mechanics for it. And it actually tries to draw sympathy because they did, within 45 days after the due date of the return, submit their payment. Nevertheless, they're subject to the penalty if they don't have good cause or reasonable cause for filing late. Could we go on and address the good cause question? Yes. I mean, it seems to me there are obviously two separate questions here. One, the legal advice relating to the marital deduction and waiting to file a return, and the second one being what they call the ancillary matters. As to the first one, the Court of Federal Claims ruled against you. And I must say I find it a little puzzling that the IRS allows the marital deduction when at the time of the due date of the return the requirements of naturalization haven't been satisfied. But that's neither here nor there. That's what you do. You do allow it. So it seems to me that there's a decent argument that you have to wait to get the marital deduction because if you filed on the due date, you wouldn't get it because the naturalization hadn't occurred, and that you can get it by filing late and having the naturalization occur in the interim. So why under those circumstances isn't there a reasonable cause for waiting to file a return to earn the marital deduction? Well, Your Honor, we first and foremost defend the decision with regard to the last nine months. We think in this case the last nine months is correct. I understand. Our position on briefing, we did take the fallback position, is that if you read the regulation that correlates to the marital deduction provision allowing a non-citizen spouse to claim that the estate may claim the deduction when they become naturalized, even if late, it also quite clearly states. But nevertheless, the return is considered filed when actually filed. We would suggest that that is a rather unambiguous statement that it's late, and therefore the cost of obtaining a marital deduction in that situation is the penalty. And in this particular case, in fact, it was economically viable for the estate to proceed as it did because even with the penalty, they made out quite a bit better than they would have than not being allowed the marital deduction. So that is our position. Again, we would rather emphasize the fact that in this particular case, and we understand that the court may not be of a mind to have to reach this other portion, this first delinquency portion, but we believe that it ought to affirm on the basis that the last nine months, at which point the maximum penalty was reached, there was just no reasonable basis for it. What role under the statute does the reasonableness of the legal advice play in this determination? For example, suppose a lawyer told his client, don't bother paying your income tax because the income tax is unconstitutional. Presumably, you would seek a penalty under those circumstances. Is that because the advice is unreasonable? The cases are somewhat all over the place, and I think you could argue that that's substantive in a sense, but it's obviously so unreasonable on its face that it can't possibly be a good cause or reasonable cause for not filing. Then you'd have to go to a jury on the actual willfulness question under cheek, right? Yes, but in the criminal context, yes. I think, you know, and I've thought of this, and I think a balancing act that ought to be played on a case-by-case basis is the more sophisticated the taxpayer, the less he can rely on erroneous advice that's clearly erroneous, that's just not, has very little basis in the law or no basis in the law. It may be substantive advice, but... But is the position you retain the position that despite the fact that the result is a 25% penalty in the entirety and all of the other things we've been discussing, this is not substantive advice despite the powerful substantive consequences? Which portion of the advice? We accept the fact that with respect to the advisor's discussion and analysis of the Merrill deduction and claiming it on a late return would be substantive, and a less sophisticated taxpayer certainly could rely upon it. I guess our brief suggests that this particular executor, being quite an experienced attorney in his own right in financial matters, probably ought to have been able to tell on his own that a late return is going to trigger the penalty even under the regulations. So where is the non-substantive advice that led to the imposition of this penalty? The latter advice that you could wait until all ancillary matters were complete. We don't find that substantive, but rather the belief by this advisor that the IRS isn't going to impose the penalty because... So the fact that the consequence is dramatic doesn't render the advice that led to that consequence substantive? Is that the position? Are you suggesting that because the penalty is so harsh that it becomes more of a substantive issue? I'm not necessarily following, but... Can I actually just put aside the advice about you can wait until there is naturalization? At that point, as I understood Mr. Strauss's point, it was something like until certain remaining disputes were resolved, we didn't have any idea what number to put on the return. What's your response to that? I hadn't thought that that was the case, Your Honor. I thought it was fairly clear that a pretty accurate complete return could be completed far in advance of when it was filed. And the law is such, the regulations and the case law say that you cannot avoid the penalty by suggesting that you couldn't file a complete and accurate return when due. You can always supplement that return with the completed information, and the liability can then be readjusted. So I guess I'm asking a very maybe mundane question. I don't know if it's mundane or not, but suppose they just didn't know what the number was. What should they have put in? Zero? Should they have put in their best guess with an asterisk saying, this is just a guess, we're not lying? Or just how are they supposed to do this? Assuming that we have a different case, because in this particular case, the numbers were well assembled by that time. But if your nine months is coming up on the original due date of the return, and you think you need more time to do the accountings... No, no, no, no, no, no, no, no. Supposing they get the one extension, and then let's suppose now we're past the issue on which the Court of Federal Claims agreed with them, and they see the naturalization has just occurred, and they realize, okay, my reasonable cause, again assuming, has run out, I need to file my return. Suppose now for a minute that they don't actually know the number. What are they supposed to do? Fill it out as completely as possible and get it in. Best estimate. Best estimate? Or is it zero? I would say your best estimate based upon the numbers that you have, you should file it on time. You can supplement later. It's not reasonable cause, it seems to me, to say, well, I'll just wait until I can do it. That's an open-ended kind of filing. Boyle instructs how imperative it is that the IRS be able to process these things promptly, to determine the taxes promptly, and assess the taxes promptly. All right, so just to be clear, I understand the position of the service. It is that it's totally irrelevant that they prepaid an overpayment of what they eventually owed. Is that right? No. I don't think that's the right way to say it because under the law and the way it's understood by the IRS, it wasn't prepaid. They needed to pay it before that filing due date, the original filing. The IRS had their money, so what did they do? Do you want to give it back with interest? You say it's irrelevant that they prepaid? Apparently, they had competent legal advice. They had experts who told them this or that, which led to this mess. Including that, said, never mind. Take the position which is most favorable to the government and send them the money. So they did. And so the government had it for a couple of years before they finally straightened it out. You're saying that's irrelevant. They still have to pay the 25% penalty just as if they didn't do that. Under the mechanics of the statute, yes. The late filing is penalized severely. I'm not saying that it's irrelevant that they would prepay. But if they had done it 45 days earlier, as they acknowledged and they put note to their original refund claim, it would have been okay. They didn't. They just simply didn't pay it in sufficient time to avoid the late filing penalty. Okay. Any more questions? Can I just, one more. Is there more that they could have done in 2003, early 2004 to ask the IRS, can we wait? And if so, for how long? Or is it full stop? I expect that they might have asked for an advisory on that, some input. They did, in fact, ask for, of course, the six-month automatic extension, which they received. But no, they relied on their counsel's advice. I know what they did. I guess it feels to me like it might be relevant. There certainly are means by which, I suppose if you're being represented by counsel, not cheap means, the way you could seek an advisory opinion from the service. But, of course, in the meantime, the clock's running, and those things take time. I wouldn't have hurt, I suppose, to check. I thought the regulation under the advisory opinion says something, the provision says something about a clock tolling on, while the advisory. I don't know, Your Honor. Okay. I frankly don't know. Okay. Thank you. Thank you. Thank you. Mr. Strauss. Thank you, Your Honor. A couple things, and I can try to knock this off in a couple minutes. My colleague keeps on raising, and they brought it up in their briefs, how the executor in this case was a very sophisticated attorney. All right? He had no knowledge of any tax law whatsoever. So by them making that argument on a summary judgment motion, they're asking the court to make an inference that because he was a bright attorney and had a sophisticated background, that somehow he should not seek advice or that it negates reasonable cause. They're not allowed to make that negative inference. I think they're probably arguing that with respect to the first issue about waiting until the marital deduction was resolved. I didn't hear them making that argument with respect to the second issue about the ancillary mandate. Okay. And that's the case. I'm just saying globally they've made that argument that somehow because he's sophisticated, it negates reasonable cause at some point in the process. I'm not sure if it's in the first stage or the second stage, but I just wanted to make that clear for the court because it's an improper inference to draw against a non-movement. All right? Number two, the court asked, what if he didn't know the number? What are you supposed to put down? And like I said, at Joint Exhibit 228, paragraph 19, Mr. Gatticus's declaration… Joint Exhibit? Joint Appendix? Joint Appendix, excuse me. Joint Appendix 228. Even after she became naturalized in August of 2005, as I brought up earlier, they didn't know what the precise marital deduction was because… But as I understand it from what you've said earlier, and I think you were quite candid about it, is putting aside the marital deduction, if somebody is just uncertain about the computation, that that's not an excuse for a late filing. You're saying this is special because of the marital deduction. Correct. That's correct, right? Correct, correct. I mean, this is the one out of a hundred where there's no guidance, there's no case law, there's no regulation, there's nothing. And the executor, who was sophisticated, was solely relying on Mr. Gatticus's advice. That was the only thing that he could follow, that he could rely on, and he did. And Mr. Gatticus said, even in his deposition, he said, you calculate the marital deduction, you wait for it to become naturalized, and ultimately, with haste, after certain ancillary matters are finished, you file the return. I would be happy to file some supplemental brief. The court brought that up originally or initially in the oral argument. I'd be pleased to do that if the court finds it necessary. Well, perhaps so. There is this question, really, of the interpretation, 66-51, through A and B. And if there is any sense, somewheres, of what the intention was, if it was, in fact, contemplated, that this could result in a penalty, as here, of an entire prepaid, overpaid tax, which it looks as if it was just done in the interest of some prudence, to send in more than might be due, to avoid penalty, perhaps. I can't tell you didn't really press that in the argument, either side. I'd be interested in the view of the service, as well, and as applied, perhaps, to the limited facts here, rather than some kind of global construction, where there was a prepayment within a certain time frame. And to see if there's any guidance in the legislative record as to this interpretation, because I think we all agree the position taken by the service seems to lack equity, if anything else. I agree. I agree. And nonetheless, it was intended to impose such a vigorous, without exception, penalty for failure to file a piece of paper, no matter how much overpayment is made, for that to be the law of the land. Because if so, I think the taxpayers need to know that that's the construction that they will face. Can I ask you a question that I asked Mr. Dolit? Is there more that you could have done than you did to ask the IRS how long you could wait? I believe that a taxpayer can go in on some type of private letter ruling or something. We sent a letter to the IRS explaining our position and outlining it. They never got back to us. But you never requested a letter? We didn't request a formal administrative pronouncement. Mr. Datticus relied on the reg. He relied on the statute. And based on his interpretation, thought that the statute and the reg says you can wait. While she's becoming naturalized, you can hold off filing. And it's kind of like a simple, straightforward provision. And then it stops there, though. It's truncated because it doesn't go on to say when you have to file after that. So everybody was in legal no man's land. Was there anything in the tax lawyer professional literature, tax advisor, or I don't even know the range, in which this question of marital deduction timing and the estate tax was discussed so that there was some kind of basis other than this inference from the regulation and from the Federal Register commentary in Treasury's rulemaking on this to reflect a relevant community understanding of the way this is supposed to work? To be totally honest with you, Your Honor, I don't know if there's secondary authority that discusses the custom and practice under these circumstances. I know that there was no case law, statute, or regulation that addressed this particular issue. Okay, now let's set a deadline for this project that we've assigned. It could turn out to be complicated and time-consuming. We didn't intend to create some multi-thousand-hour research project. But I must say it did strike us that there didn't seem to be any explanation or foresight of this possibility, which I would have thought would have gotten the attention of taxpayer associations. Is a month enough time? That's fine with me, Your Honor. Mr. Nolet said that they had done a little bit of searching. So perhaps if you can somehow collaborate and contribute your views to us. I don't know, it's complicated. Judge Dyke thinks a month is too long. Okay, all right. So we like to move the cases along when they're before us. Let's split the difference. Let's say 20 days. That's fine, Your Honor. So what is the precise date that you're talking about? Well, what we were interested in is really the relationship. The statute, 6651. Okay. And how to interpret subsection B, which applies to subsection A, because it seems as if that could have a fairly direct relationship as to what the penalty is levied on. If there were an underpayment rather than an overpayment, I think that there's no argument that the penalty could be levied on the underpayment. To levy it on an overpayment seems curious. So I think this is an area that raised question in our mind because of the potential impact, if that is to be the practice of the service. So 20 to that statute. Okay. Is that enough? We'll work simultaneously. I think simultaneous contributions, you might collaborate to share. That would be January 30th, Your Honor. January 30th. No, I'm sorry. I didn't hear you. 20 days from today would be January 30th. January 30th, he's saying is the date. Okay. Yeah. Good. And I would assume less is more, so would you like this limited to some page amount, or do you want 10 pages or five pages, or what are you looking for, exactly? Just for some additional guidance. One page. I'm understanding what you're saying. Soon is short. Thank you very much. All right. Thank you, Bill. Thank you.